

Heath Law
PLLC.

# EXHIBIT E

Clerk of the Superior Court
*** Electronically Filed ***
J. Coronado-Guillen, Deputy
1/16/2020 8:00:00 AM
Filing ID 11270765

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

## HONORABLE BRAD ASTROWSKY

**David V Segui**
        Petitioner

AND

**Donna Moniz**
        Respondent

**Case Number:  FC2015-004537**

# ORDER FOR LEGAL DECISION MAKING, PARENTING TIME AND CHILD SUPPORT

The Court entered a Consent Decree ("Decree") concerning the dissolution of the parties' marriage on July 17, 2017.  The Court separated the issues of parenting time and legal decision-making from the dissolution of the parties' marriage.  Therefore, the Decree did not address parenting time and legal decision-making.  This Order will address parenting time, legal decision-making authority, allocation of costs for the therapeutic interventionist ("T.I.") and other mental health providers, child support, and attorney's fees.

The Evidentiary hearing in this matter occurred on 11/14/2019. The Court has considered the evidence which includes where applicable/presented, the demeanor of the witnesses, reviewed the exhibits as well as the case history, and considered the parties' arguments and agreements.

The Court makes the following findings and enters the following orders:

## JURISDICTIONAL FINDINGS

**THE COURT FINDS** as follows:

- There are minor children common to the parties, namely: ▮▮▮▮▮▮ ▮▮▮▮▮▮ Shai Segui [DOB 7/14/2006].
- Arizona was the children's home state on the date the petition was filed or was the children's home state within six months before the filing and the children are absent from this state but a parent or person acting as a parent continues to live in this state.
- The federal Parental Kidnapping Prevention Act does not apply and that no international law concerning the wrongful abduction or removal of children applies.

## LEGAL DECISION-MAKING AND PARENTING TIME

### Best Interest Findings: A.R.S. § 25-403

A.R.S. § 25-403(A) enumerates specific factors for the Court to consider, among all factors that are relevant to the children's physical and emotional well-being. The best interest of a child is the primary consideration in awarding legal decision-making authority and parenting time. *Hays v. Gama*, 205  99, 102, ¶ 18, 67 P.3d 695, 698, ¶ 18 (2003).

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

Segui and  Moniz                                        Case Number: **FC2015-004537**

In making the legal decision making and parenting time determination, the Court is mindful that as a matter of public policy, absent evidence to the contrary,"it is in a child's best interest: (1) To have substantial, frequent, meaningful and continuing parenting time with both parents[; and] (2) To have both parents participate in decision making about the child." *See* A.R.S. § 25-103(B).

As a precursor to the analysis of the children's best interest and because of the parents' inability to reach an agreement, the Court considers the following issues regarding the parents.  See A.R.S. § 25-403.01.

- *Whether a parent's lack of agreement is unreasonable or is influenced by an issue not related to the child's best interests*.
  Each parent is motivated by what they respectively believe to be in the best interests of the children.

- *The past, present and future abilities of the parents to cooperate in decision-making about the children to the extent required by the order of joint legal decision-making*.
  Mother has had no parenting time with the children since September, 2016, and February, 2017, respectively.  In addition, Mother is the rejected parent and Father is the preferred parent of the children.  Therefore, the parents have not cooperated in decision-making about the children for years.  However, as the parents have had generally positive co-parenting sessions, the Court is optimistic that through Our Family Wizard, the parties will be able to cooperate in decision-making concerning the children.

- *Whether the joint legal decision-making arrangement is logistically possible*.
  As the parents have had generally positive co-parenting sessions, the Court is optimistic that through Our Family Wizard, the parties will be able to cooperate in decision-making concerning the children.

**THE COURT FINDS** as follows regarding the children's best interests pursuant to A.R.S. § 25-403(A):

1  *The past, present and potential future relationship between the parent and the child*.
   The parties were married in 2003.  Father retired from his career as a professional baseball player in 2004.  The parties' first child ("Oldest Son") was born in July, 2016, and the parties second child ("Youngest Son") was born in June, 2008.  The parties resided in Kansas City until 2013, when the parties moved to Arizona, where both have remained to this day.  Father testified that in 2013, Mother told him that she and their children were moving to Arizona with or without him; thus, he went along with Mother's desire for the move.  Father was opposed to the move because his two other children and other family members resided in Kansas City at the time.  The lion's share of the parties issues with each other and the issues relevant to Father's present status as the preferred parent and Mother's status as the rejected parent developed after the family moved to Arizona.
   After the birth of both children, the parent shared normal day-to-day child-rearing responsibilities.  However, as Father had older children from a previous relationship and Mother did not, Mother, in her mind wanted to have more input into raising the children as she told Father on multiple occasions that he had an opportunity to raise his older kids, so she will raise their children in the manner she desired.
   Father testified that after the move to Arizona, Mother engaged in conduct that limited his relationship with the boys.  For example, in the summer of 2013, Father had to spend time in Kansas City to finalize the sale of a home.  He wanted the children to come to Kansas City to see him, but Mother refused.  Also, in August, 2013, Father purchased property in Idaho.  He wanted the children to go with him to the property, but Mother refused because the trip coincided with the boys' first week of school.  However, the boys missed school, without Father's prior knowledge or consent, because Mother took them to San Francisco to see a baseball game.
   In May, 2015, Mother left the marital home as she desired a dissolution of her marriage to Father.  However, she still came to the home every day and saw the boys.  However, in the summer of 2015, Mother obtained an Order of Protection ("OOP") against Father that included the children due to an

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                               Case Number: **FC2015-004537**

allegation of physical abuse.  On July 9, 2015, upon agreement of the parties, Dr. Sarah Petty interviewed the children concerning the abuse allegation.  See. Exh. 28.  Dr. Petty found that there was no physical abuse of the children by Father.  As a result, the kids were removed from the OOP.  The parties, in turn, agreed to a week on/week off parenting time schedule.

After the OOP hearing, the parties attempted to reconcile so the parties and children spent time with each other every day.  In fact, for two weeks in August, 2015, the parties and the boys went to California for a church conference and stayed in the same room together.  An incident occurred on the drive home from this conference that has blossomed into one of the reasons given by Youngest Child now provides as a reason why he doesn't want to spend time with Mother.  During the drive home Mother didn't feel well so she laid down in the middle row of the vehicle.  Oldest Child sat in the front passenger seat and Youngest Child sat in the third row.  Youngest Child, who was six years old at the time, jumped onto Mom in an effort to wrestle with her.  Youngest Child wanted to play, but Mother didn't because she was ill, in fact Mother was hospitalized once she returned to Arizona.  Youngest Child put Mother in a hold from behind, similar to a choke hold, and Mother swung backwards in an effort to get released from the hold.  The totality of the evidence supports a finding that Mother was ill, the wrestling hold made her feel worse, and she simply wanted to get out of the hold, but Youngest Child, as he believed he and Mother were playing, didn't release Mother as he should have so Mother had to take action to physically remove Youngest Child from her back.  Certainly, Mother regrets hitting Youngest Child.  However, she had no ill intent when she did same.  Furthermore, the totality of the evidence concerning this incident do not meet the criminal statutory definition of an assault.  The Court, based upon the evidence presented, is confident that this incident did not constitute a criminal act.  Therefore, it is not objectively reasonable for Youngest Child to use this incident as a justification to reject spending time with Mother.  In fact, Father testified that after the family returned to Arizona from the church conference the family often participated in activities together.  The issue with this incident that created problems was Mother's report to DCS that she accidentally hit her son in the face when she tried to put a blanket behind her.  See Exh. 38 at Bates 2170.  The Court finds Mother was not truthful with DCS.  Unfortunately, the children know about Mother's blanket story.  This, understandably, has negatively impacted their view of Mother.

In October, 2015, Mother had the children for their fall break.  Father, therefore, went independently to Idaho.  Eventually, however, Mother took the children to Idaho and she and the children stayed together at the same home.

The family also spend Christmas Eve in the same home together.

Another incident that has negatively impacted Mother's relationship with the children, at least from Oldest Child's perspective, occurred in January, 2016.  Father testified that he received a call from Mother and could hear Oldest Child screaming in the background.  Oldest Child reported that his uncle hit him, pushed him, and that Mother and her family said negative things about Father to him.  The totality of the evidence doesn't support a conclusion that there was an assault on Oldest Child.  This incident has also grown into something that Oldest Child uses as a reason for his rejection of Mother.  However, nothing in this incident alone supports a finding that Child's reason is rational.

Both children reported to Father that in 2016, Mother practiced witchcraft, did incantations, and took her mother to a healer at the church because the maternal grandmother had cancer.  The children use this as another reason why they are fearful of Mother.  However, there is no evidence to support a conclusion that Mother practiced or participated in witchcraft.  However, Father's testimony that he hasn't told the children that Mother isn't a witch is consistent with Father's lack of proactive effort to challenge the children about their negative feelings towards Mother.  Father testified that the church the family attended was on that involved speaking in tongues and that he believes that, per the Bible, some people can heal others through touch.  Yet, the Children do not appear to have any issue with Father's participation in a church that holds those beliefs or with Father for same.  Therefore, again, the children,

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                        Case Number: **FC2015-004537**

on this topic, appear to have another irrational basis to reject Mother, i.e. one that is not based upon facts.

In 2016, Mother did speak to Father often concerning her difficulties with Oldest Child in that he did not act respectfully towards Mother.  The evidence concerning this points to Mother's parenting skills issues, the child being emboldened by his exposure to Father's negative discussions about Mother, and Father's lack of proactive efforts to foster the children's relationship with Mother.

Mother last spent time with Oldest Child in September, 2016.  Oldest Child reported to Father that Mother only picked up Youngest Child from school and left without picking him up from school. Mother disputes this and instead claims that Father picked up Oldest Child so she didn't have the opportunity to pick him up from school.  Certainly, Mother and Oldest Child experienced difficulties in their relationship at this time.  As indicated above, they were partially as a result of weaknesses in Mother's parenting skills, but also were the result of Father, albeit perhaps not completely intentionally, fostering the difficulties in Oldest Child's and Mother's relationship instead of being supportive of Mother's relationship with Oldest Child.  Mother failed to be as proactive as she should have been at this time to overcome the issues, which, over time, have become akin to fantastical lore that gets made more fantastical with each telling.

In February, 2017, during Youngest Child's Market Day at school another incident occurred which has significantly contributed to the rejection of Mother by both boys.  The Court reviewed a video of this incident.  See Exh. 87.  Father testified that prior to this day Youngest Child had asked Oldest Child to help him as he didn't want to go home with Mother.  Father further testified that on the day of the incident there was a tussle between Mother and the boys.  Father testified that Mother elbowed Oldest Child in the ribs and got into a tussle with Youngest Child.  Father obtained an OOP after this incident and Mother hasn't had parenting time with Youngest Child since the incident.  The video does not have sound.  Therefore, the Court cannot determine what was said before or during the incident.  However, the video is clear that one of the boys punched Mother without any physical provocation from Mother. Then the boy who punched Mother attempted to grab his brother, who was holding onto Mother, away from Mother.  Mother put out her arm to keep the child who hit her from grabbing her other son. However, the video does not show a "tussle."  It does not show Mother hitting a child with an elbow.  In fact, it doesn't show Mother hitting either of the boys.  DCS investigated this incident and found the allegation of physical abuse to be unsubstantiated.  The video, the Court concludes shows an assault upon Mother, which would meet the statutory definition of a misdemeanor assault.  DCS similarly concluded that the video does not show any physical abuse.  Mother, the Court finds took no inappropriate physical action towards either of the boys during this incident.  The use of this incident as a justification to reject Mother also appears irrational and not based on fact.  Father takes the position that the video was doctored by the school district, even though Father was not present and is not seen on the video.  The Court rejects the conclusion that the school district intentionally doctored the video in order to eliminate Mother's offending behavior.  Father testified that he took Oldest Child to the hospital after the incident as the boy complained of rib pain.  Father testified that the hospital diagnosed the child with bruised ribs.  Father's testimony, however, does not appear to be accurate.  DCS reviewed the hospital records and noted that the only thing seen on the x-ray of the child's ribs was a deformity, i.e. not an injury.  Dr. Butler, the T.I. in this matter, noted that Father's retelling of this incident matches the boys' retelling of this incident.  Father testified that he took this as a compliment because he only repeats what the boys share with him.  This demonstrates, however, that Father refuses to accept any alternative hypothesis or account of any negative incidents that were alleged to have occurred between Mother and the boys.  Certainly, a parent should support one's children.  However, a parent's proper support of one's children is not without limits.  And supporting one's children to the exclusion of a parent based upon inaccurate information is one such limit.  Father's support of his children, while it may come from a positive and caring place, actually has served to fostered the present circumstances in which he is the

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and Moniz**                                                    Case Number: **FC2015-004537**

preferred parent and Mother is the rejected parent.

A major roadblock concerning Mother's relationship with Oldest Child concerns an Oldest Child's allegation that he was sexually abused by Mother. Father testified that while the divorce was pending, Oldest Child would periodically ask Father if he thought Mother ever sexually abused him. Father obtained input from Dr. Mellon, Father's individual counselor, as to how to appropriately address this with Oldest Child. Father, in turn, would periodically ask Oldest Child if there was anything he wanted to share with Father. Eventually, while in Father's car, Oldest Child told him that something happened and that he didn't say anything earlier because he was embarrassed. Father, in turn, made a report to DCS. Father reported that Oldest Child told him that he slept naked on his mother and he could feel her pubic hair. Father reported that he believed this incident occurred some time when the parties lived in Kansas City. DCS investigated this allegation and found that "if [Mother] were nude around her son, it would be unorthodox but not neglectful. [The boys] disclosed different stories regarding what their mother would allegedly allow them to do while she was fully or partially nude, but neither child indicated they were forced to be nude or forced to touch their mother in any way." See Exh. 38 at Bates 2174. Youngest Child denied any sexual abuse in his interview with DCS. Id. at 2184. In fact, he reported that he feels safe in both parents' respective homes. Oldest Child also did not disclose any sexual abuse by Mother. Instead, Oldest Child reported that when he was about eight years old he slept in the same bed with Mother and wound up on top of her. The child also reported that Mother would let he and his brother play with their mother's breasts for "a lot of years," but it stopped when he was eight or nine years old. Youngest Child confirmed Oldest Child's report concerning the breast touching, and that it occurred "a lot" when he was five or six years old. However, Father reported that Mother would on occasion dress at home in a way in which her breasts would be exposed and he would have to stop his sons from touching them. Father indicated he would often tell Mother she needed to dress more appropriately.

The Court finds that nothing that was disclosed concerning the alleged co-sleeping incident would constitute a criminal offense, let alone a sex crime. At most, the incident represents an accidental touching of the pubic area and not genitalia. While this incident may have caused and does continue to cause some embarrassment, Oldest Child's present reaction to same and referral to Mother as a pervert or sex offender is not reasonable or based upon the facts concerning this incident as born out by the evidence presented. Instead, Child's reaction is more likely caused by Father's failure to challenge the child's premise that Mother is a sex offender, Father's negative statements he has made about Mother in the children's presence, and Father's lack of proactive support of Mother's relationship to the children. As to the breast touching allegations, the Court finds that Mother did not permit or invite the children to touch her breasts. Father likely discussed his displeasure with Mother's dress in front of the children and they have some memory of same. In addition, a reasonable inference from the totality of the evidence is that Father has discussed his view of Mother's dress and actions as provocative in the children's presence. DCS found the allegations of any sexual conduct by mother to be unsubstantiated. The Court agrees that the children were not sexually abused by Mother at any time in any manner.

An example of a child's unreasonable and irrational reaction to Mother occurred in December, 2018. Mother mailed a Christmas card to the children and Father advised them of same. To Father's credit, he encouraged the children to open the card or at least keep it and open it later when they were ready. Oldest Child indicated he didn't even want the card in the home and left with the card to return it to Mother's home. Father, instead of addressing this issue with Oldest Child, challenging the child concerning his inappropriate behavior, and encouraging Mother's relationship with the children, did nothing to prevent Oldest Child from leaving the home to return the letter to Mother. Oldest Child wrote on the letter before he returned it: "leave us alone we don't want it sexual abuser." See Exh. 59. Dr, Mellon, Father's counselor, testified that Father should have been more active in this situation and prevented Child from returning the card, and he should have disciplined Oldest Child for doing same.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                         Case Number: **FC2015-004537**

In February, 2017, Dr. Moran was appointed to be the T.I. for the family.  However, as a result of Dr. Moran's recommendation, and a stipulation of the parties, the Court ordered Dr. Lavit to conduct a comprehensive family evaluation.  Dr. Moran, in fact, concluded that the T.I. process can't proceed without such an evaluation.  Unfortunately, Dr. Lavit took 18 months to complete his evaluation.  And the parties and current mental health professionals involved in this matter agree that Dr. Lavit's evaluation was woefully inadequate and provided no assistance.  Accordingly, Mother's relationship with the children continued to get more distant as she had no access to them.  Contrarily, Father's relationship with the children strengthened as he was the primary residential parent and met all of their daily needs.  Another example of Father enforcing the children's view of him as the preferred parent and Mother as the rejected parent concerns a person referred to as "Uncle Billy."  Father accused Mother of engaging in an incestuous relationship with Uncle Billy in front of Oldest Child.

Father, no doubt, loves children immensely and is very supportive of the children.  Father cooks all of the children' meals, prepares their school lunches, taken them to school, picks the children up from school, takes the children to their various sports' responsibilities, helped them with their school work, and generally meets all of their daily needs.  Father should be complemented for all that he does for his children.  However, with the passage of time, Father's lack of true proactive support of Mother's relationship with the children, and the lack of progress in the T.I. process, have combined to cause the children's attachment to Father to increase and, concomitantly, increased their distance from Mother and strengthened their lack of belief that they need her in their life.  Father also blindly believes all of the children's allegations of abuse by Mother.  The blind support of children's allegations does not help the children or cause Father to be a supportive parent.  Instead, it fosters the children's unreasonable and irrational negative feelings towards Mother.  Father, as the preferred parent, needs to be more proactive concerning his support for the children to reconcile with Mother.  Father will have to even reject some of the children's deeply help, but incorrect and unreasonable positions.  It is only with Father's support will the relationship between Mother and the children heal.  Father testified that he can't tell the boys that they are safe to go back to the T.I. process until the abuse allegations are resolved.  However, the allegations have been resolved, i.e. there will be no prosecution and DCS unsubstantiated the reports.  Father must support the boys' participation in the T.I. process.  If Father refuses to engage in this proactive support, the only way to heal Mother's relationship with the children would be to make Mother the primary custodial parent and prohibit Father from having any contact with the children for a significant period of time.  As Dr. Butler testified, in a severe care of child contact problems, the preferred parent bears the burden of encouraging the children's relationship with the rejected parent.  Dr. Butler stressed that Father is the key to Mother's reunification with the children; the children's attitude won't change until Father encourages - even compels - the children to have a relationship with Mother.  Dr. Butler also testified that even if Mother was perfect in this process (and Dr. Lanzilotta indicated Mother is doing what she needs to do in this process), we would be no further along in Mother's reunification with the children because of Father's reticence to support same.

Father has rejected the T.I. process, in part, he testified, because the boys have, in his opinion, experienced trauma; and until the trauma is addressed reunification with Mother cannot occur.  However, Father's premise is not supported by the evidence.  Dr. Butler testified that the boys' reactions are not consistent with a typical trauma response.

Father also has clear bitter feelings concerning Mother's relationship with her current significant other (and possible fiancé), Mark Grudzielanek ("Mark").  This man was a teammate of Father's when they both were with the Montreal Expos.  Understandably, any person would have difficulty of their former spouse entered into a relationship with a coworker, and this is even more true in the context of the very stereotypically masculine world of professional sports.  Therefore, it is not unreasonable to conclude that some part of Father wants to punish Mother for same.  This is supported by Father's contention that Mother and Mark spread negative rumors about him that cost him the opportunity to be the hitting coach

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

for the Washington Nationals (formerly the Montreal Expos).

Mother, from the totality of the evidence, was not a very nurturing Mother when the children were younger.  This may have been the result from the lack of nurturing she received as a child, as supported by Father's testimony.  Father's daughter, Hailey Wiles, has had the opportunity to observe Mother's relationship with the children from birth.  She credibly testified that Mother was not very nurturing toward the children, and was not warm like a typical mother.  Dr. Mellen testified that is children don't feel safe or nurtured by a parent, they can have an overreaction to a relatively minor incident with that parent.  This is likely a contributing factor to the children's negative overreactions to Mother.  Therefore, Mother will need to work on her parenting skills as it applies to being a nurturing parent.

2   *The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.*
The children have no relationship with Mother's family.  Mother's parents have chosen to back away from the boys given their rejection of Mother.  Perhaps if the maternal grandparents remained involved in the children's lives, the Children' negative feelings about Mother may have been mitigated.
As a result of things Father has told the children, they have a very negative view of Mother's fiancé.  Father's improper actions will have to be addressed during the T.I. process.
The children are close to Father's other children.

3   *The child's adjustment to home, school and community.*
The children are comfortable in Father's home.  The children perform well academically and are, like their father, gifted athletes who participate in baseball and basketball.
The children have been estranged from Mother for years and she has not spent time with the children in her some since early 2017.

4   *If the child is of suitable age and maturity, the wishes of the child as to legal decision-making and parenting time.*
The children have unequivocally expressed their desire to reject Mother and to live with Father.  The children do not want to participate in the T.I. process.  This case, in fact, represents an extreme example of parental rejection by both children.
The children's feelings towards Mother do not match the history of actual events nor are consistent with reality.  The children's relationship with Mother has been negatively impacted by Mother's lack of nurturing parenting skills; their potential exposure to their parent's high conflict relationship (i.e. trauma); their irrational overreaction to the reported incidents of alleged abuse by Mother that have been found to be unsubstantiated by DCS, not pursuable as criminal violations by the police, and that have been rejected by this Court determined not to constitute intentional acts of physical or sexual abuse; and Father's lack of proactive support of children's relationship with Mother.
Therefore, as the children's positions are not premised in reality or rationally related to any abusive behavior by Mother, their wishes cannot be treated as gospel.  Instead, their wishes need to challenged, their past trauma (if any) needs to be addressed therapeutically, and they need to be encouraged (if not coerced) by Father to have a relationship with Mother.

5   *The mental and physical health of all individuals involved.*

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

Segui and Moniz                                        Case Number: **FC2015-004537**

Both parents are involved in individual counseling.  Neither parent has been diagnosed with any mental health issues.  However, each parent needs intervention by mental health professionals to address their co-parenting issues, their own parenting skills deficiencies, and their actions that have contributed to the children's entrenched position that Father is the preferred parent and Mother is the rejected parent.

A difficulty exists because Father is an external processor and Mother is quiet because she is intimidated by same.  This can be addressed through the T.I. and co-parenting counseling process.

The Court feels compelled to address Julie Skakoon's highly offensive and improper comments she made to Father's counselor concerning Father.  In the aftermath of multiple tragedies relating to multiple murders committed by an individual relating to his family law matter, Ms. Skakoon told Dr. Mellen that Father is the type of person that could kill.  Dr. Mellen testified, and this Court agrees, that Ms. Skakoon's conclusion is not accurate.  Father's status as a physically imposing former professional athlete who is an external processor, i.e. he talks aloud to process information, may cause others to be intimidated by him; however, nothing in the record suggests that he is capable of homicide.  Ms. Skakoon, hopefully, in hindsight, is now aware of her gaffe and will hopefully address same with Dr. Mellen and Father through an appropriate apology.

There were multiple recommendations that the children participate in a trauma assessment.  The Court will order same.

6  *Which parent is more likely to allow the child frequent meaningful and continuing contact with the other parent.  (This paragraph does not apply if the Court determines that a parent is acting in good faith to protect the child from witnessing an act of domestic violence or being the victim of domestic violence or child abuse.)*

As indicated above, Father has failed to fully embrace the T.I. process.  He needs to change his present mindset dramatically and encourage, if not coerce, the children to participate in the T.I. process.  Father's failure to fully support the T.I. process has negatively impacted Mother's ability to have frequent, meaningful, and continuing contact with the children.

Other than the one occasion on which Mother took the children to San Francisco instead of permitting them to spend time with Father in Idaho, Mother never unreasonably interfered with Father's ability to have contact with the children.  Mother, therefore, is the parent who is more likely to allow the children to have frequent, meaningful, and continuing contact with the children.

7  *Whether one parent intentionally misled the Court to cause an unnecessary delay, to increase the cost of litigation or to persuade the Court to give legal decision-making or parenting time preference to that parent.*

Neither parent intentionally misled the Court.

8  *Whether there has been domestic violence or child abuse pursuant to A.R.S. § 25-403.03.*

The record does contain references to allegations of domestic violence committed against Mother by Father.  However, Mother determined that she didn't want to get into these allegations through her testimony or presentation of other evidence because she wanted to focus on reunifying with her children.  Father has supported the children's allegations of abuse.  As indicated above, the Court finds that Mother did not engage an any acts of physical or sexual abuse of the children.

9  *The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding legal decision-making or parenting time.*

The parties did not enter into any agreements.

10  *Whether a parent has complied with chapter 3, article 5 of title 25, Arizona Revised Statutes.*

The domestic relations education provisions of A.R.S. § 25-352 have been satisfied.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

Segui and  Moniz                                   Case Number: **FC2015-004537**

11 *Whether either parent was convicted of an act of false reporting of child abuse or neglect under A.R.S. §*
*13-2907.02.*
Neither party has nay such conviction.

In addition to the foregoing, the Court must also consider any history of domestic violence or child
abuse (A.R.S. § 25-403.03), any substance abuse issues (A.R.S. § 25-403.04) and any sexual offender issues
(A.R.S. § 25-403.05).

### Domestic Violence

David Segui has alleged that Donna Moniz has committed domestic violence. Therefore, the Court
further considers the award of legal decision-making authority and parenting time in light of the alleged
presence of domestic violence under A.R.S. § 25-403.03. Arizona's law establishes the following:

> A person commits an act of domestic violence if that person has: (1) intentionally,
> knowingly or recklessly caused or attempted to cause sexual assault or serious
> physical injury; (2) placed a person in reasonable apprehension of imminent serious
> physical injury to any person; or (3) engaged in a pattern of behavior for which the
> court may issue an ex parte order to protect the other parent who is seeking legal
> decision-making authority or to protect the child or the child's siblings. [A.R.S. § 25-
> 403-03(B)].

> The court shall consider evidence of domestic violence as being contrary to the best
> interests of the child. The court shall consider the safety and well-being of the child
> and of the victim of the act of domestic violence to be of primary importance. The
> court shall consider a perpetrator's history of causing or threatening to cause physical
> harm to another person [A.R.S. § 25-403.03(B)].

In accordance with A.R.S. § 25-403.03(C), the Court has considered the following factors and makes the
following findings to determine whether domestic violence has been committed:

1. *Findings from another court of competent jurisdiction.*
   No Court, other than this one, has addressed the allegations of physical and sexual abuse committed
   against the children by Mother.  This Court finds that Mother did not commit any acts of physical or
   sexual abuse against the children.

2. *Police reports.*
   No police reports were presented.  However, evidence was presented that law enforcement determined
   there was insufficient evidence to support the allegations made against Mother.

3. *Medical reports.*
   No medical reports were admitted.  However, DCS records contained reference to the alleged rib injury
   sustained by one of the children during the school incident in February, 2017.  The medical records did
   not support the allegation of physical abuse.

4. *Department of Child Safety records.*
   DCS determined all allegations of physical and sexual abuse made by the children against Mother to be
   unsubstantiated.

5. *Domestic violence shelter records.*
   No such records were presented.

6. *School records.*

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

No school records were presented.  However, the video of the February, 2017,incident at the school was presented.  That video did not contain any evidence of physical abuse committed by Mother against either child.  The video, however, did show a misdemeanor assault against Mother by one of the children.

7. *Witness testimony.*
The Court incorporates, by reference, its recitation of the witness testimony concerning the allegations of abuse contained above.

**THE COURT FINDS** that based on the above, Donna Moniz has not engaged in acts of domestic violence against the children..

### Substance Abuse

A.R.S. § 25-403.04 requires further analysis if a parent has abused drugs or alcohol or has been convicted of any drug offense under title 13, chapter 34 or any violation of A.R.S. § 28-1381, A.R.S. § 28-1382, or A.R.S. § 28-13783 within twelve months before the petition or request for legal decision-making authority or parenting time is filed.

**THE COURT FINDS** that there is not substantial evidence against either parent.

### Sex Offenders

Neither party has presented any evidence to require consideration of the provision of A.R.S. § 25-403.05 (A).

## Legal Decision-Making

*Legal decision-making authority*, as defined by A.R.S. § 25-401(3), means the legal right and responsibility to make all non-emergency legal decisions for a child including those regarding education, health care, religious training and personal care decisions. For the purpose of interpreting or applying any international treaty, federal law, a uniform code or the statutes of other jurisdictions of the United States, legal decision-making means legal custody.

**For** ▮▮▮▮▮▮▮ **and Shai Segui**

**THE COURT FINDS** that based upon the above, it is in the children's best interest that David Segui and Donna Moniz be awarded joint legal decision-making authority.

**IT IS THEREFORE ORDERED** awarding David Segui and Donna Moniz joint legal decision-making authority regarding ▮▮▮▮▮▮ and Shai Segui, as defined in A.R.S. § 25-401(2). For the purpose of this order,

"Joint legal decision-making" means both parents share decision-making and neither parent's rights nor responsibilities are superior except with respect to specified decisions set forth herein. Shared or joint legal decision-making authority does not necessarily mean equal parenting time (A.R.S. § 25-403.02(E)).

**Specific Terms: Decision-Making Authority**– Parental decisions shall be required for major issues in raising the children and in meeting on-going needs. When they arise, each parent shall give good faith considerations to the views of the other and put forth best efforts to reach a consensus decision. If the decision involves medical or schooling issues, the parties may further elect to seek input from treating physicians or educators. Both parents shall be provided with such input.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

**IT IS FURTHER ORDERED** The parents shall use Our Family Wizard as their primary form of communication.  Each parent shall establish their own Our Family Wizard account within 5 calendar days of the entry of this Order by the Clerk of the Court, and he responsible for their own respective costs associated with same.  Each parent shall check their account no less than once every 24 hours, and respond to all messages within 8 hours of reading same.  The parties shall only use phone calls or text messaging to address medical emergencies concerning a child, or to address matters that must be resolved within a single 24-hour period.

## Parenting Time

The Parties share joint legal decision making of the children. "Shared legal decision-making does not necessarily mean equal parenting time." See A.R.S. § 25-403.02(E).

**THE COURT FINDS** that the following parenting plan is practical and also maximizes each parent's parenting time to the extent it is in the children's best interests.  See A.R.S. § 25-403.02(E).

**IT IS THEREFORE ORDERED** that parenting time shall be exercised as follows:

Father shall be the primary residential parent pending the parties' and the children's participation in the T.I. process as outlined, step-by-step below.  Through each step detailed below, Mother shall participate in individual counseling with Dr. Lanzilotta (at her expense), Father shall continue with individual counseling with Dr. Mellen (at his expense), the children shall continue in their counseling with Dr. Branton (to be paid 10% by Mother and 90% by Father), and the parents shall continue with their co-parenting counseling through Ms. Lewis-Thome (to be equally shared by the parties).

Step 1: The children will participate in a trauma assessment by Dr. Branton.  The children will then participate in any recommended treatment/therapy.  The trauma assessment shall be scheduled, but not necessarily conducted, within seven business days after the entry of this Order.  The Court understands that the actual assessment won't likely be performed within seven business days, it merely needs to be scheduled.

Step 2: After the trauma assessment is completed, Dr. Branton shall discuss the results of same with the T.I. Dr. Butler and determine what, if any, treatment the children need to participate in (and the degree of participation) before the T.I. process commences.  The T.I. process shall begin when Dr. Branton and Dr. Butler agree it shall begin.  The frequency of the T.I. sessions shall be left to the discretion of Dr. Butler, but she shall consult with Dr. Branton concerning same.  In the event Dr. Butler concludes Father has hindered and/or not adequately supported the T.I. process and Mother's reunification with Children so that the T.I. process has stalled, Dr. Butler shall direct the parties to participate in an intensive T.I. program of her choosing, for which Father will be 100% financially responsible.  If after participation in that intensive T.I. program, the T.I. process has stalled due to Father's hindering of same and/or his lack of adequately supporting the T.I. process, Mother may file a Petition to Modify Parenting Time and/or Legal Decision-Making Authority, even if less than one year has passed since the entry of this present Order, in order to request a reversal of physical custody, i.e. placement of the children with Mother on a full-time basis.

Step 3: Once Dr. Butler deems it is appropriate, Mother shall have supervised parenting time with the children for two hours once per week at a public location.  The supervisor shall be a third-party professional who regularly supervises parenting time for family court matters in Maricopa County.  Mother shall select the supervisor and be 100% responsible for the cost of same.  Mother shall select the public location.  Father will

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and Moniz**                                    Case Number: **FC2015-004537**

be responsible to drop-off and pick-up the children so that Mother may exercise this supervised parenting time. The parents shall work together to agree upon the day and hours of these supervised visits.

Step 4: Once Dr. Butler deems it is appropriate, Mother shall have unsupervised parenting time with the children for two hours once per week at a public location. Mother shall select the public location. Father will be responsible to drop-off and pick-up the children so that Mother may exercise this supervised parenting time. The parents shall work together to agree upon the day and hours of these visits.

Step 5: Once Dr. Butler deems it is appropriate, Mother shall have unsupervised parenting time with the children every Sunday from 9:00 a.m. until 6:00 p.m. The parties shall exchange the children at a public location that is mutually agreed upon by the parties.

Step 6: Once Dr. Butler deems it is appropriate, Mother shall have parenting time one week day from the end of the school day (or 3:00 p.m. if there is no school) until 7:30 p.m. The parents shall work together to determine the weekday for this parenting time; once the parents agree on the weekday it shall be the same every week. Mother shall also have parenting time every other weekend from Friday at the end of the school day (or 3:00 p.m. if there is no school) until Saturday at 7:30 p.m. Mother shall pick up the children from school to begin her parenting time. If the children have no school and at the end of Mother's parenting time, the parties shall exchange the children at a public location that is mutually agreed upon by the parties.

Step 7: Once Dr. Butler deems it is appropriate, Mother shall have parenting time one week day from the end of the school day (or 3:00 p.m. if there is no school) until 7:30 p.m. The parents shall work together to determine the weekday for this parenting time; once the parents agree on the weekday it shall be the same every week. Mother shall also have parenting time every other weekend from Friday at the end of the school day (or 3:00 p.m. if there is no school) until drop off at school on Monday or 9:00 a.m. on Monday if there is no school. Mother shall pick up the children from school to begin her parenting time and she shall drop off the children at school at the end of her parenting time. If the children have no school, the parties shall exchange the children at a public location that is mutually agreed upon by the parties.

Step 8: Once Dr. Butler deems it is appropriate, the parties shall share an equal parenting time schedule on a 5-2-2-5 plan. Mother shall be the Monday and Tuesday parent; Father shall be the Wednesday and Thursday parent; and the parents shall alternate each weekend. On Monday, Mother's parenting time shall begin at the end of the school day or at 3:00 p.m. if there is no school; Mother's parenting time shall end at school drop-off on Wednesday; Father's parenting time shall begin at the end of the school day on Wednesday or at 3:00 p.m. if there is no school; Father's parenting time shall end at school drop off on Friday or at 3:00 p.m. if there is no school; Mother's parenting time shall begin at the end of the school day on Friday or at 3:00 p.m. if there is no school; Mother's parenting time shall end at school drop-off on Wednesday; Father's parenting time shall begin at the end of the school day on Wednesday or at 3:00 p.m. on there is no school; Father's parenting time shall end at school drop off on Monday or at 3:00 p.m. if there is no school. This two week schedule will continue thereafter. Any parenting time exchange that will not occur at school, shall occur at a public location that is mutually agreed upon by the parties.

Dr. Butler will remain the T.I. until further order of the Court or until 30 days after the commencement of Step 8, whichever occurs first. The T.I. sessions, at each stage, shall occur at the frequency as determined by Dr. Butler.

Dr. Butler's costs shall be shared by the parties as follows: 10% Mother; 90% Father.

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY
### HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

The Holiday and Summer schedules listed below will apply only when the parties have reached Step 8.

**Holiday Schedule:**

| Holidays | Petitioner (David Segui) | Respondent (Donna Moniz) | Details |
|---|---|---|---|
| Spring Break | Odd Year | Even Year | From the end of school before the break until school resumes. |
| Easter | Even Year | Odd Year | From 6:00 p.m. on Friday until 6:00 p.m. on Sunday evening. |
| Mother's Day | None | Every Year | Begins at 6:00 p.m. on the Friday before the day and ends at 6:00 p.m. on Sunday evening. |
| Father's Day | Every Year | None | Begins at 6:00 p.m. on the Friday before the day and ends at 6:00 p.m. on Sunday evening. |
| 4th of July | Even Year | Odd Year | From 6:00 p.m. on July 3rd until 9:00 a.m. on July 5th. |
| Fall Break | Odd Year | Even Year | From the end of school before the break until school resumes. |
| Halloween | Odd Year | Even Year | From 6:00 p.m. to 8:30 p.m. on October 31st. |
| Thanksgiving | Even Year | Odd Year | Starts at the end of school before Thanksgiving Day and ends at 6:00 p.m. on the Sunday following Thanksgiving Day. |
| Winter Break - Including Holidays First Segment | Odd Year | Even Year | Begins when school ends for the holiday break and continues until 10:00 a.m. on December 25th |
| Winter Break - Including Holidays Second Segment | Even Year | Odd Year | Begins at 10:00 a.m. on December 25th and continues until 6:00 p.m. on December 30th |
| Winter Break - Including Holidays Third Segment | Odd Year | Even Year | Begins at 6:00 p.m. on December 30th and continues until 6:00 p.m. on the day before school resumes at the end of the holiday break. |

**Holiday Time Priority:**  Holiday time shall take priority over regular parenting time and summer vacation time.

**Summer/Vacation:** Regular Schedule and Two Weeks Vacation.

- David Segui and Donna Moniz also shall have two weeks of uninterrupted parenting time during the summer commencing on a mutually agreed upon date.

- The two weeks may be continuous or may be taken in two separate weeks. If the parties cannot mutually agree, David Segui shall have precedence in even-numbered years, and Donna Moniz shall have precedence in odd-numbered years.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                      Case Number: **FC2015-004537**

- David Segui shall notify Donna Moniz of the two weeks by April 15th in even-numbered years, and Donna Moniz shall notify David Segui of the two weeks by April 15th in odd-numbered years.

- Neither David Segui nor Donna Moniz may use summer vacation time to preempt the other parent's holiday time.

**IT IS ORDERED** that the following terms shall apply:

1. **Communication Between Parents:** Children are best served when parents communicate about the children and consider the views of the other parent. Parents are expected to communicate about the children in a civil and respectful way. Parents shall use e-mail as their primary method for communication. They shall respond promptly (within 24 hours is a good practice), even if only to acknowledge the email. Please print copies of all e-mails so that if an issue arises in the future, each party has proof as to what was communicated.

   Parents should avoid discussing this court case with or in front of the children. They should not involve the children in any conflicts between the parents, but may assure the children they are trying to work out appropriate arrangements so that the children can have frequent and regular time with both parents.

   Parents should avoid speaking negatively about each other to the children, and instead, should show respect for the other parent. The parties should consider how his or her conduct or words, including postings on social media, may be harmful to a child. Speaking negatively to a child about a parent may harm the child. This Court may consider negative, insulting, bullying, or other inappropriate behavior in determining whether legal decision-making or parenting time should be changed.

2. **Weekly Parental Communication Regarding the children:** To assist the parents in developing an appropriate level of communication, the parents shall exchange weekly "reports" via e-mail. The weekly email report shall be in addition to any other communication between the parents.

   - By no later than 9:00 PM on each Sunday, each parent shall send an e-mail to the other parent. The e-mail shall detail relevant events during the parenting time regarding the children, including medical, school or extra-curricular activities. Further, any upcoming events or appointments shall be detailed in the e-mail. Lastly, any issues that exist for each child shall be summarized along with that parent's thoughts as to how or what must be addressed. The e-mail shall not be critical in nature, but rather shall be informational and designed to create a dialogue on any issues that require both parties to act.

   - By no later than 9:00 PM on each Monday, each parent shall send a responding e-mail. It may state as little as confirmation that the prior e-mail from the other parent has been received, or it may include substantive responses to issues or events noted by the other party.

   - Each parent is directed to print each e-mail and store them in a binder or other filing system. It will then serve as the "record" for critical, non-emergency communication, whether for future decision making or for future litigation purposes.

   - In **ALL** communications including the weekly e-mails, Mother and Father shall be respectful in their tone and shall not use any profanities or expletives. The parties also shall not use any substitutes for profanities, such as random keystrokes, and shall not use any changes in font or emphasis to show anger or dissatisfaction.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                        Case Number: **FC2015-004537**

3. **Travel:** If either Mother or Father has any desire to travel with the children outside of the state of Arizona, that parent must provide the other parent with a written itinerary of their travel by no later than thirty (30) days prior to the intended date for travel. If either parent travels within the state of Arizona but more than 100 miles from that parent's home, that parent must provide the other parent with a written itinerary of their travel by no later than seven (7) days prior to the intended date for travel.

   David Segui shall retain possession of the children's passports, except when Donna Moniz is traveling with the children.

   **International travel**: If Donna Moniz is requesting the travel, David Segui must give Donna Moniz the children's passports within 24 hours of receiving the written itinerary, Donna Moniz must return the passport to the other parent within 24 hours of returning to Arizona from the travel.

4. **Children's Communication With Both Parents:**

   • Mother shall only communicate with the children via the T.I. process, and she may also direct cards to the children on their birthdays and holidays if Dr. Butler deems it to be appropriate. When the parties get to Stage 6, Mother shall have reasonable contact with the children when they are in Father's care.
   Father shall have no contact with the children during Mother's parenting time through and including Step 3; thereafter, Father shall have reasonable contact with the children when they are in Mother's care.

5. **Parental Access To Records And Information:** Both parents are entitled to have equal access to prescription medication, documents, and other information concerning the children's, education and physical, mental, moral and emotional health including medical, school, police, court and other records directly from the custodian of the records or from the other parent. A person who does not comply with a reasonable request shall reimburse the requesting parent for court costs and attorney fees incurred by that parent to force compliance with this subsection. A parent who attempts to restrict the release of documents or information by the custodian, without a prior court order, is subject to appropriate legal sanctions.

6. **Prescription Medications:** A parent with joint legal decision-making authority shall not designate one pharmacy in a single location as the only source of the child's prescription medication without agreement of the other parent. A parent who attempts to withhold prescription medication without a prior court order is subject to appropriate legal sanctions.

7. **Relocation:** Neither David Segui nor Donna Moniz shall relocate the residence of the children outside of the state of Arizona or to a distance greater than 100 miles from the current residential locations without compliance with A.R.S. § 25-408. Any findings that a party has failed to comply may result in sanctions against that party pursuant to the same statute.

8. **Mediation Or Conciliation Services:** The parties are required to participate in mediation through a private mediator as agreed or through this Court's Conciliation Services to attempt to resolve any disputes, problems or proposed changes regarding legal decision-making or parenting time before an evidentiary hearing on any legal decision-making or parenting time issues.

9. **Periodic Review:** It is recognized that the needs of the children may change over time. At a minimum, the parents shall review the terms of this overall plan at least every 12 months to address whether any changes may be appropriate.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                              Case Number: **FC2015-004537**

10. **Sex Offenders:** In accordance with A.R.S. § 25-403.05(B), a parent must notify the other parent immediately if the parent knows that a convicted or registered sex offender or a person who has been convicted of a dangerous crime against children (as defined in A.R.S. § 13-705) may have access to the child. The parent must provide notice by first class mail (return receipt requested), by electronic means to an electronic mail address that the recipient provided to the parent for notification purposes or by other communication accepted by the Court.

11. **Notify Other Parent of Address Change**: Each parent will inform the other parent of any change of address and/or phone number in advance or within 14 days of the change.

12. **Notify Other Parent of Emergency:** Both shall promptly inform the other parent of any emergency or other important event that involves the minor children.

13. **Cooperate and Work Together**: Both parents shall exert their best efforts to work cooperatively in future plans consistent with the best interests of the minor children and to amicably resolve such disputes as may arise.

14. **Notify Other Parent of Problems with Parenting Time Ahead of Time** If either parent is unable to follow through with the Parenting Time arrangements involving the minor children, that parent shall notify the other parent as soon as possible.

15. **Parental Communication about Court Proceedings:** Neither parent may discuss any aspect of court litigation with the children or in their presence, or involve the children in any way in conflicts between the parents, except by assuring thechildren that the parents are trying to work out appropriate arrangements so that the children can have frequent and regular access to both parents. The parents are likewise prohibited from taking any action, or making any statement to the children or to any third party, that has the purpose or effect of disparaging the other parent or harming the other parent's relationship with the children. This provision of the Court's order will be enforced through court sanctions including contempt if necessary.

### Additional Parenting Time Orders

The weekly reports discussed above shall be sent via Our Family Wizard.

The travel provision above, only applies when the parties get to Stage 8.  Prior to that Father may travel with the children at his discretion so long as it does not interfere with the T.I. process or Mother's scheduled parenting time.

# CHILD SUPPORT

### THE COURT FINDS that:

• The relevant financial factors and the discretionary allowances and adjustments which the Court will allow for a current calculation of child support pursuant to the Arizona Child Support Guidelines are set forth in the Child Support Worksheet and order which the Court hereby incorporates and adopts as its findings with respect to child support.

• **Child Support:** Donna Moniz is obligated to pay child support to David Segui pursuant to the Arizona Child Support Guidelines in the amount of $416.00 per month. Application of the child support guidelines in this case is inappropriate or unjust. The Court has considered the best interests of the child in determining that a deviation is appropriate. After deviation the child support order is  $0.00 per month. Based upon evidence and testimony presented, the deviated child support amount is in the children's best interests and is appropriate and warranted under the circumstances.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

**IT IS THEREFORE ORDERED that:**

• **Child Support:** Donna Moniz shall pay child support to David Segui in the sum of $0.00 per month, payable on the 1st day of each month commencing 02/02/2020 by income withholding order.

## <u>ATTORNEY FEES AND COSTS</u>

David Segui and Donna Moniz have requested an award of attorney fees and costs. An award of attorney fees and costs is governed by A.R.S. § 25-324. A.R.S. § 25-324 provides as follows:

A.  The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceedings under this chapter or chapter 4, article 1 of this title. On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions. The court may make these findings before, during or after the issuance of a fee award.

B.  If the court determines that a party filed a petition under one of the following circumstances, the court shall award reasonable costs and attorney fees to the other party:

1.  The petition was not filed in good faith.
2.  The petition was not grounded in fact or based on law.
3.  The petition was filed for an improper purpose, such as to harass the other party, to cause an unnecessary delay or to increase the cost of litigation to the other party.

C.  For the purpose of this section, costs and expenses may include attorney fees, deposition costs and other reasonableness expenses as the court finds necessary to the full and proper presentation of the action, including any appeal.

D.  The court may order all amounts paid directly to the attorney, who may enforce the order in the attorney's name with the same force and effect, and in the same manner, as if the order had been made on behalf of any party to the action.

**THE COURT FINDS** that there is  substantial disparity of financial resources between the parties. Because of the disparity David Segui has considerably more resources available to contribute toward Donna Moniz's attorney fees and costs.

**THE COURT FURTHER FINDS** that David Segui acted unreasonably in the litigation. Specifically, David Segui acted unreasonably by doing the following: Father had delayed the T.I. process by failing to be in full support of same, and by making negative comments about Mother in children's presence..

**THE COURT FURTHER FINDS** that the provisions of A.R.S. § 25-324(B) do not apply.

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

### HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                   Case Number: **FC2015-004537**

**THE COURT FURTHER FINDS** that neither David Segui nor Donna Moniz knowingly presented a false claim, knowingly accused the other parent of making a false claim, or violated a court order compelling disclosure or discovery such that an award of attorney fees and costs is appropriate under A.R.S. § 25-415.

**IT IS THEREFORE ORDERED granting** Donna Moniz's request for attorney fees and costs.

**IT IS FURTHER ORDERED** that David Segui shall pay a portion of Donna Moniz's reasonable attorney fees and costs. Not later than 01/31/2020, counsel for Donna Moniz shall submit all necessary and appropriate documentation to support an application for an award of attorney fees and costs, including a *China Doll* Affidavit and a form of order. By no later than 02/14/2020, David Segui shall file any written objection. If Donna Moniz's counsel fails to submit the documentation by 01/31/2020, no fees or costs will be awarded. The Court shall determine the award and enter judgment upon review of the Affidavit as well as any objections.

## ADDITIONAL ORDERS

**IT IS ORDERED** Each parent shall provide their individual counselor with a copy of this Order.  Each parent shall ensure that the T.I., Dr. Branton, and Ms. Lewis-Thome each have a copy of this Order.

The parents shall not share any portion of this Order with the children without the prior approval of both Dr. Branton and Dr. Butler.

The Court must decide the amount of attorney's fees and costs to be awarded but finds there is no just reason to delay making a final order. **IT IS THEREFORE ORDERED** pursuant to Rule 78(b), Arizona Rules of Family Law Procedure, that this is a final judgment/decree and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

Done in open Court on: <u>01/13/2020</u>                    _____

                                                           Judge Brad Astrowsky

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

## HONORABLE BRAD ASTROWSKY

Segui and  Moniz                                          Case Number: **FC2015-004537**

**David V Segui**                              **Case Number:  FC2015-004537**

(Petitioner)                                   **Atlas Number:**

AND

**Donna Moniz**

(Respondent)                                   **CHILD SUPPORT ORDER**

### THE COURT FINDS that:

1.  David Segui and Donna Moniz owe a duty to support the following child(ren):

| Child Name | Date of Birth |
|------------|---------------|
| Shai Segui | 07/14/2006    |

2.  **Child Support Guidelines:** The required financial factors and any discretionary adjustments pursuant to the Arizona Child Support Guidelines are as set forth in the Child Support Worksheet, attached and incorporated herein by reference.

3.  **Child Support:** Donna Moniz is obligated to pay child support to David Segui pursuant to the Arizona Child Support Guidelines in the amount of $416.00 per month. Application of the child support guidelines in this case is inappropriate or unjust. The Court has considered the best interests of the child in determining that a deviation is appropriate. After deviation the child support order is  $0.00 per month. Based upon evidence and testimony presented, the deviated child support amount is in the children's best interests and is appropriate and warranted under the circumstances.

4.  **Support Arrears:** Arrears not addressed.

5.  **Past Support:** No Past Support Judgment will be entered.

### IT IS ORDERED that:

1.  **Child Support:** Donna Moniz shall pay child support to David Segui in the sum of $0.00 per month, payable on the 1st day of each month commencing 02/02/2020 by income withholding order.

2.  **Arrearage Judgment:** No additional judgment for child support arrears is entered.

3.  **Past Support:** No judgment for Past Support is entered.

4.  **Total Monthly Payments:** Donna Moniz shall make total monthly payments to David Segui of $0.00 per month payable on the 1st day of each month commencing 02/02/2020 as follows:

| | |
|---|---|
| Current Child Support payment as ordered above: | $0.00 |
| Child Support Arrearage payments: | $0.00 |
| Current Spousal Maintenance payment: | $0.00 |
| Past Due Spousal Maintenance payment: | |
| Clearinghouse Handling Fee: | $0.00 |
| Total Monthly Payment: | $0.00 |

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

## HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

5. **Clearinghouse:** All payments shall be made through the Support Payment Clearinghouse pursuant to an income withholding order signed this date. Any time the full amount of support is not withheld, Donna Moniz remains responsible for the full monthly amount ordered. Payments not made directly through the Support Payment Clearinghouse shall be considered *gifts* unless otherwise ordered. All payments shall be made payable to and mailed directly to:

**Support Payment Clearinghouse**
**P.O. Box 52107**
**Phoenix, AZ 85072-2107**

**Payments must include the Payor's name, ATLAS number, and Social Security Number.**

6. **Current Address:** Pursuant to A.R.S. § 25-322, the parties shall submit current address information in writing to the Clerk of the Superior Court and the Support Payment Clearinghouse immediately. Donna Moniz shall submit the names and addresses of their employers or other payors within 10 days. The parties shall submit address changes within 10 days of the change.

7. **Medical Insurance:** David V Segui shall be individually responsible for providing medical insurance for the minor children, and shall continue to pay premiums for any medical, dental and vision policies covering the children that are currently in existence.

8. **Uninsured Costs:** The costs of medical, dental and vision expenses not paid by insurance shall be shared as follows:

David Segui:  50%                          Donna Moniz:  50%

9. **Travel Costs:** The costs of travel related to parenting time over 100 miles away shall be shared as follows:

David Segui:  50%                          Donna Moniz:  50%

10. **Tax Deductions:** The federal and state tax exemptions for the dependent Children are allocated as follows:

**Parent Entitled To Deduction Per Schedule**

| Child Name | DOB | Age | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|
| Shai Segui | 07/14/2006 | 13.5 | David Segui | David Segui | David Segui | David Segui | David Segui |
| ▮▮▮▮▮ | ▮▮▮▮▮ | 11.6 | Donna Moniz | Donna Moniz | Donna Moniz | Donna Moniz | Donna Moniz |

Each Year, Donna Moniz may claim exemptions allocated from above only if all child support and arrears ordered for the year are paid by December 31 of that year.

11. **Information Exchange:** The parties shall exchange financial information including copies of tax returns, earnings statements, a Parent's Worksheet for Child Support Amount, residential addresses and the names and addresses of their employers every 24 months.

## IMPORTANT INFORMATION

12. **Other Orders:** If this is a modification of child support, all other prior orders of this Court not modified remain in full force and effect.

13. **Emancipation:** Generally the obligation to pay child support in the full amount ordered herein continues until the court formally modifies this order with a new order upon request of one of the parties or when the youngest child is emancipated. A child is emancipated:

On the date of the child's marriage.
On the child's 18th birthday and graduation from high school or age 19 (whichever comes first).
When the child is adopted.

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

Segui and  Moniz                                          Case Number: **FC2015-004537**

When the child dies.

14. Even though there are orders regarding medical insurance and the allocation of the right to claim a child as a dependent for the purposes of federal taxes contained in this judgment, this is not binding on the IRS. Under the Affordable Care Act, the parent who claims the child as a dependent on a federal tax return has the obligation to ensure that the child is covered by medical insurance and may be penalized by the IRS for failing to do so.

Father, in his Separate Pre-Hearing Statement claims to pays $618 per month for the children's health, dental, and vision insurance. However, his AFI indicates that these costs apply to his four children (two of whom are now adults). Therefore, only half of that cost will be applied to the children in this case.

Neither parent is employed. Therefore, the Court attributed minimum wage to each parent. Each parent, however, is capable of full-time employment and are encouraged to seek same. Father as a former professional athlete certainly has a much higher earning capacity than Mother who lacks a GED and who did not work during the marriage.

The Court finds that Mother's status as the rejected parent was, in large part, fostered by the actions/inactions of Father. As a result of same she has not had parenting time since September, 2016, with one child and February, 2017, with another. This is not due to her choice. As a result, the Court rejects Father's argument for an award of past child support.

This calculation represents Mother's present anticipated parenting time. However, once the parents reach Stage 8, and perhaps in between depending upon the duration of each stage, the child support may need to be modified; which can be done through stipulation or through the Court's simplified child support modification process.

 The deviated child support amount enables both parents to provide the children with the necessities of life, including food, clothing, and shelter, and does not place an undue burden on either parent.

Father has substantially more assets than Mother as the result of his career as a professional baseball player. Mother did receive assets as a result of the parties' divorce, but those assets did not equal Father's. Overall, a downward deviation to zero is appropriate and in the best interests of the children. Given Father's substantial resources in comparison to Mother, a deviation to zero would have been appropriate between September 1, 2016 and January 31, 2017 when Mother had parenting time with Youngest Child only; to zero between February 1, 2017, and May 31, 2018 when Mother had no parenting time with the children and received spousal maintenance; and to zero from June 1, 2018 forward when Mother had no parenting time with the children and received no spousal maintenance. Therefore, Mother's current child support obligation will be zero, and Father's request for an award for past child support is denied. Had Father not interfered in the T.I. process Mother would have had presumably equal parenting time with the children, which would have lessened Father's financial burden. Father cannot be the reason for Mother's lack of parenting time and simultaneously argue that she should be held financially responsible for Father having the children full-time.

No further claims or issues remain for the Court to decide. Therefore, **IT IS FURTHER ORDERED** pursuant to Rule 78(C), Arizona Rules of Family Law Procedure, this final judgment/decree is signed by the Court and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY
HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                                    Case Number: **FC2015-004537**

Dated: 01/13/2020

Judge Brad Astrowsky

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY
## HONORABLE BRAD ASTROWSKY

### CHILD SUPPORT WORKSHEET

**Petitioner:**   David V Segui                                     **Case No:**  FC2015-004537

**Respondent:**   Donna Moniz                                     **ATLAS No:**

**Total Number of Children:**      2
**Presumptive Termination Date:** 7/1/2026

|  | David Segui | Donna Moniz |
|---|---|---|
| **GROSS MONTHLY INCOME:** | **$2,080.00** | **$2,080.00** |
| Spousal Maintenance (Paid/Rec'vd): | | |
| Court Ordered Child Support of Other Relationships (Paid): | | |
| Custodian of Other Child Subject of Order: | | |
| Support of Other Natural or Adopted Children NOT Ordered: | $0.00 | $0.00 |
| **ADJUSTED GROSS INCOME:** | **$2,080.00** | **$2,080.00** |
| **Combined Adjusted Gross Income:** | | $4,160.00 |
| **Primary Residential Parent is:** David V Segui | | |
| **BASIC CHILD SUPPORT OBLIGATION FOR 2 CHILD(REN)** | | **$1,130.00** |
| **Plus Costs for:** | | |
| Adjustment for 1 child over age 12 at (10.00)%: | | $56.50 |
| Medical, Dental, and Vision Insurance: | $309.00 | |
| Monthly childcare costs for 1 child: | | |
| *Less Federal Tax Credit to Custodian of (25.00)%:* | $0.00 | $0.00 |
| Extra Education Expenses: | | |
| Extraordinary (Gifted or Handicapped) Child Expenses: | | |
| **TOTAL CHILD SUPPORT OBLIGATION** | | **$1,495.50** |
| Each Parent's Proportionate Percentage of Combined Income: | 50.00% | 50.00% |
| Each Parent's Proportionate Share of the Total Support Obligation: | **$747.75** | **$747.75** |
| Parenting Time Costs Adjustment for: Donna Moniz | | |
| *Parenting Time Table (A) for (36) days at (3.10)%:* | | **$35.03** |
| **Total Additions to Child Support Obligation paid by each parent:** | **($309.00)** | **$0.00** |
| **PRELIMINARY CHILD SUPPORT OBLIGATION:** | **$438.75** | **$712.72** |

```
 _____
|  SELF SUPPORT RESERVE TEST                  |
|   Donna Moniz Adjusted Gross Income:        $2,080.00 |
|   Less Paid Arrearages Allowed:             |
|   Less Self Support Reserved Amount:        $1,663.97 |
|   Discretionary Income:                     $416.03 |
 _____
```

**FINAL CHILD SUPPORT OBLIGATION PAYABLE BY** Donna Moniz:                **$416.00**

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

HONORABLE BRAD ASTROWSKY

**Segui and  Moniz**                              Case Number: **FC2015-004537**

# ENDORSEMENT PAGE

CASE NUMBER: FC2015-004537                 SIGNATURE DATE: 1/13/2020

E-FILING ID #: 11270765                         FILED DATE: 1/16/2020 8:00:00 AM

GREGG R WOODNICK

SANDRA B BURT

FAMILY SUPPORT SERVICES-CCC